Right the clerk will call the next case Well the council who are going to argue, please step up and briefly identify yourselves Erin Levine, and I'm here for Debra Lyman who's the appellate and cross appellee And Michael DiDomenico from Lake Tilgat for the appellee and cross appellant Bob Lyman, who's the president of the Court of Appeals All right, thank you counsel. We do have a cross appeal on this case which is rather unusual The rules don't specifically address how we deal with this in arguments But our usual practice is to tell the parties to just anticipate each other's arguments And we'll proceed in the usual fashion with appellant, appellee, and then a reply from the appellant And close at that point All right, thank you. Ms. Levine, about 15 minutes for each side with some more time for reply Okay, may it please the court, before I get into some of the technical arguments for reversal I want to talk about what happened here After 27 years of marriage and 4 years of litigation, the parties entered into a marital settlement agreement Which was supposed to roughly divide the marital assets 50-50 But that didn't happen Instead, Robert grossed more than $1.7 million than Deborah did in this marital settlement agreement How did this happen? Robert was a 40% owner of a closely held company, Mudd Lyman He was required, pursuant to a court order, to pay Deborah half of his net income And deposit distributions from Mudd Lyman into a court-ordered escrow Yet Robert admitted that he simply stopped taking a salary and let his company's retained earnings grow And they did grow to about $4 million just days before the divorce Now Ms. Levine, your client had her own experts go in and appraise Mudd Lyman, did she not? She had an expert report that she got in 2008, that's correct Why weren't those retained earnings reflected in the value of the company that she had in her hands Before she would have signed the marital settlement agreement? Because that was an old expert report What happened was that both parties got experts How old was it? Tell me that too Just about a year, and what happened was after the expert report And the experts made clear that the major asset of Mudd Lyman was this Home Depot contract That was providing over 90% of the revenue After the expert reports were completed and after the money was spent valuing the companies What happened was Deborah received a letter, actually our counsel did On January of 2009, saying that the Home Depot was terminating its contract with Mudd Lyman As of July 17th of that year At that point, Deborah began taking some more discovery Doing some more due diligence on whether or not it was true that that contract was terminated And also at that time, that agreed order was still in effect So what Deborah did was she subpoenaed Home Depot She took Robert's deposition again And what she determined was that yes, this whole contract was terminating And given that it was 90% of the value of the company, or probably more It made sense to start to settle the case Instead of spending more money on discovery And especially more money on another business valuation Especially since the major asset of the company now was terminating So then what happened was that as we were negotiating the settlement We got two letters from Robert And the letters said that Robert was no longer getting a salary And so he wasn't going to be paying support This was something that Robert had said before once the Home Depot contract had terminated That it was likely he was going to not be able to have a salary anymore And he also said that the value of his company would be substantially decreased So Deborah didn't just stop at that Instead what she decided to do in her marital settlement agreement Was to force Robert to swear in an asset affidavit That he had no income of any kind between January 17th, when he said the income stopped And September 2nd, which was the date of the divorce And it was during that period of time that we later find out That Robert admitted that he purposely stopped taking income And let these retained earnings grow So it was correct that he had no income? No, that's not correct Because under two very distinct cases that were actually One of them was cited in our 1401 petition In re-marriage of Lundhall and in re-marriage of Dan And the holding of those cases is that retained earnings are not per se Assets of the company What's relevant is, in a closely held company Whether or not the shareholder or the shareholder's spouse Can in some way manipulate income distribution So as to hide marital income in retained earnings And that's what happened here But counsel, Lundhall and Dan did not involve a marital settlement agreement It didn't, but it did involve money that was being hidden in retained earnings That was really marital income The same was true with Dan And the issue in those cases really is Can somebody maneuver things so that they can hide income From their personal efforts from their spouse And here, on top of it, in his asset affidavit We had Robert swear that he had no agreement With his partner Donald Mudd to do exactly what he did He swore that he had no agreement for bearing to receive any income And that's exactly what he did And he admitted it in the briefing on the petitions to dismiss Both the 1401 petition and the petition to dismiss Was the term income defined? Excuse me, you go, counsel, please There was some expectation that there would be additional Some additional disbursements to Robert When the Home Depot contract was finally concluded I mean, your client knew that, didn't she? No, and that's something that's very interesting At some point, she agreed to pay $475,000 Because of not knowing what the amount was going to be That's absolutely true So what was the $475,000? That was part of her 50% of the financial assets And if you take a look at the marital settlement agreement You'll see that they were splitting assets And actually, my client was getting a little more than 50% She was getting closer to 60% Because she was the spouse who didn't work most of the marriage And if you take a look, that $475,000 Is part of the financial assets that are being split And what happened here is that Robert said Can I pay that in January? So, just a moment Did she also agree that the assets of Lyman Mudd The assets of the Lyman Mudd entities would all be his Once the settlement agreement was reached and signed and so on? Yes So then what did she think she was agreeing to? Well, what she was agreeing to was a company That had basically no asset anymore It was undisputed that the Home Depot contract Was the only thing this company had that needed any money And that terminated on January 17th But isn't there some information in the record That the Home Depot payments were always lagged They would be 60 days behind or something of that nature So that whatever work was done, say, in June That would be paid for two months later in August So if the contract was terminated earlier They would get the payment for that sometime later That's nowhere in the record The Home Depot contract is nowhere in the record And I can tell you that there's no 60-day term In that Home Depot contract But I'm just asking So the answer is no The termination of the As far as your client was concerned Once the Home Depot contract was terminated What would happen? Well, what we were led to believe was That was the end of the income stream And that was the end of the money And that's why he stopped taking his salary And so that is what we did believe And so the fact that he tells us That he's not getting his salary anymore In two letters And prior to that he's saying The company's going to significantly decrease Because we don't have this contract anymore And we knew that to be true Because our experts basically told us The only value this company has Is its Home Depot contract So it terminates He says, I'm not getting any income anymore And then he swears That he has no agreement to not take any income And lo and behold He admits that he's just letting income Accumulate in these retained earnings Well, does it comply with the definition of income or not? Is it retained earnings? Is it income? What is it? Well, it depends on the circumstances of the case And the key point here is If there's a manipulation and money That really is a result of personal efforts During the marriage Which is what we're talking about here And if there's some manipulation To not use that money that's accumulating For paying corporate expenses or the like And you're just manipulating it And basically determining to undercompensate Which is a big, big issue in Dan And that's what he did He undercompensated himself He didn't take a salary at all He said, we decided We, meaning Mr. Mudd and himself Decided not to take a salary And if you take a look at the general ledger That's attached to our 1401 petition You can see that starting at the end of June June 30th All of a sudden this money is starting to grow And there's absolutely no payroll at all For officers in August And he admits Yeah, when we stopped taking a salary We had these retained earnings grow And the reason it grew Was because it was from more personal efforts From Home Depot contracts That you just didn't distribute Miss Lee, one of the challenges in cases like this Is the doctrine of the law that tells us That the law favors settlements And disfavors undoing court orders And there are a number of recitals In the marital settlement agreement To the effect that your client has had a chance To do all these things And she's had a chance to examine things And she doesn't want any more time And she doesn't want to do any more discovery And we're all closing this up And locking the door and throwing out the key Why do we get around that here? Especially in a 1401 setting We have a bigger problem here Because if it's okay Which is what Robert seems to say That once you stop taking discovery After four years of litigation You decide to stop You think you know everything And instead you decide to take acid affidavits And sworn statements from your other party If you can't rely on those acid affidavits Because they were false in this case Then how are you going to settle? How is a divorce lawyer going to settle? The acid affidavits that you just referred to Specifically say something to the effect of Amount of money in the bank account of Mudline Zero when it was really several million What was the falsity in those affidavits? Two falsities One is that he didn't have any income during that period He already admitted He decided not to take a salary And let the income grow in the retained earnings That was the first falsity The second one was That he had no agreement with his partner Not to take any income And that's the second falsity Because he admitted he did have an agreement Did the acid affidavit specifically Have a blank or a category for The retained earnings of the partner? What it basically did was It relied on the statements that Robert made That no, he hadn't received any income And he wasn't playing any tricks Not to take any income And that's basically what the falsity is And if we have to worry about that In acid affidavits It's going to make settlement harder Not easier Let me ask you one more question Before your time runs out here Changing course a bit We've got all of your post-judgment pleadings And we get to the second amended one And that's the subject of the Grass Appeal How did count three of the second amendment 214.01 petition cure any defects In its predecessor petitions So as to survive their claim That it shouldn't be amended anymore? Under that case with the abbreviation Home is helping others Environment versus boss In that case The second district made pretty clear That what is really important Is the final complaint That goes up to the appellate court And that's what we did The final complaint That went up to the appellate court Had that count three in there And it had the count three in there Because we asked for a leave To file to amend it Solely to preserve it for appeal And that's what we did And if you take a look And count three was basically The breach of contract claim That you started out with Verbatim And then moved into a new count Of the 214.01 petition Is that correct? That's correct The leave of court And all of the cases That Robert cites Are cases where In the final pleading That is not there And he acts as though It's some sort of jurisdictional bar It's not Your honors have the ability To determine whether or not You want to review it But in all of the cases That were cited None of them were in a situation Where that final count Was not in the count That went up to the appellate court And that leads to another question Is the purpose of a 14.01 petition Is to do nothing other than Basically undo a court order It's not a vehicle to get Affirmative relief As you would get In a breach of contract claim If you file a lawsuit For a breach of contract You want money You don't get money Out of a 14.01 You just undo an order And your breach of contract claim Sort of died early on Didn't it? No, I don't think so There's nothing that precludes us From doing one or the other And the 14.01 is really fraud based And that's what we're saying There was a fraud here And we should get part of that money That he didn't disclose Counselor, let me ask you About the 14.01 You're claiming this is new evidence This fraud? Right So, the petitioner has a burden To say that the evidence Was not known before And could not have been discovered before Couldn't you have discovered this before By inquiring about What does income mean? Well, I don't know what income means I think that's not the issue I think the issue is That he didn't disclose What it was that he had And he purposely didn't disclose it And the question is Do you have to keep doing discovery? When can you stop? When can you stop And you say You know something This company has only one asset It's a contract with Home Depot The asset is gone Your spouse's opposing party Says it's gone You've taken discovery on Home Depot You're satisfied it's gone When do you stop? Four years of litigation Seven motions to compel Four with just financial issues With Mudd-Lyman At some point you've got to say You know what? The cost-benefit analysis Doesn't work here I don't need to keep doing more discovery Because I believe that this whole company Doesn't have any value And Robert is telling us He isn't getting any income anymore So you put those two things together And then we did have a safety net Because what we did was We required him to give us Our 2010 tax returns And we did that just to test The veracity of these statements And lo and behold I see them And he's got two million dollars of income He gives over the general ledger And you can see that the income is coming From when he wasn't taking the salary Also can I ask you about Do you claim there should have been a hearing On the due diligence of your client? Yes Based on what? She didn't request a hearing Did she request a hearing On the due diligence issue? Of course We got thrown out on a 619 motion There was no hearing at all This was all on motions And not only that On the 619 motion The judge takes all of the inferences Against my client There are two affidavits And on the basis of dueling affidavits He just takes Robert's version of the facts As true instead of ours And those versions are about This $475,000 Being something she negotiated And she's saying She didn't negotiate that That's part of the financial settlement And it had nothing to do with anything Other than the regular split That everybody knew there was So the issue is How could the judge Make all of these findings on a 619 Especially on a 619 Which is supposed to Admit the sufficiency of the petition So with respect to due diligence That's something that Debra has to prove In her case That's part of the 1401 petition That she has to allege It isn't a defense It's not another affirmative matter When you do a 619 Basically the court already found The due diligence to be sufficient And then it goes and makes A whole slew of factual findings Which is completely improper Debra wasn't given her day at court Due diligence is not something That's just a hard, fast rule The Ropenet case will tell you That it depends on the circumstances And in this case Where we did so much discovery And it wasn't a case like this Goldsmith case Where the person did no discovery It was on summary judgment The acid affidavit wasn't signed And there was no fraudulent concealment So it's not that situation Let me ask you to bring your argument To a close at this point Okay, so what we're asking for here Is to overturn the 1401 petition Dismissal The petition for brief dismissal And also there were sanctions Entered against me For redacting settlement communications From these letters in July I'm sorry, in August Where Robert told us He was no longer receiving a salary There's no basis for that Thank you Thank you Mr. DiDomenico Thank you, may I please the court There was nothing false About the affidavit That Bob Lyman signed In connection with The marital settlement agreement In his affidavit attached In his response to the motion to dismiss He explains that When he said he stopped taking income From the Mud Lyman companies That's because the physical labor That they were doing for Home Depot Terminated He and his partner Stopped taking a salary As did all his employees When the physical work That they were doing In all of the Home Depot stores Ended The wind up of the company Is what the rest of the money Was what represented The rest of the money That was received And that was the rest of the money That was bargained for That she was to receive In January of 2010 And that's set forth In the asset affidavit What in the record Specifically demonstrates That the $475,000 Was intended by the parties To be representative Of the wife's split Of the retained earnings Once the company Was going to be dissolved Paragraph 7.1a Of the marital settlement agreement Says there's a $2 million payment And a $475,000 payment And in consideration Of those payments And everything else That Ms. Lyman was getting In the marital settlement agreement Mr. Lyman gets all of the income All of the assets Of the Mud Lyman entities He retains ownership Of all of them And all of its assets That's what the marital settlement agreement says I don't want to get hung I don't want to presuppose Your question presupposes That these were retained earnings I'm certainly not conceding that We make the point in the brief That that was never alleged In their pleading It was never alleged That it was retained With any specificity This is sort of an invented theory For purposes of this appeal To try to call this retained earnings All that was pled Was that on the day That this case was proved up This money was in One of the Mud Lyman Corporate bank accounts That does not make it A retained earning For purposes of how you think About retained earnings That you leave money In a company And park it there For an extended period of time But what is it then? What is this money? What is it? What is it? How would you describe it? The $475,000 Yeah Well it was Not the money that was remaining The money that was That was the rest of the money That was paid on the home Depot contract Oh I understand But what do you call it? What do you And your tax return What is it? I think I think if it's If it's retained For some amount of time And it's carried on the books And on the ledgers Of the company Going forward I think at some point It becomes What the accountants Would call a retained earning Okay At some point And it becomes taxable Correct If you hold on to it For too long Correct Okay But shortly after The day of the prove up The money was dispersed Mr. Mud took his 60% Mr. Lyman took his 40% I gave you the check It's in the record Showed what the taxes Were paid Showed the net amount That Mr. Lyman got And the $475,000 Got paid from there There's no There was no There was never any Allegation with any Sort of specificity That this was Retained earning Reliance on these cases The retained earnings Cases is misplaced These are These are situations Where you have A non-marital company Okay And you have A The owner The owner operator Spouse Leaving Income To a non-marital Company That is attributable To personal To his or her Personal efforts Which under our Statute Is marital property And in the last 10 to 15 years The appellate court Has got hip To these gentlemen Who leave money In their non-marital Companies to increase The value of the Non-marital company And you know Deprive the marital Estate of the Property That's not What we have here The Mudline and Manganese were marital There's no dispute That they were marital They were bargained For They were valued To suggest that they Didn't know the terms Of the Home Depot Contract To suggest that they Didn't know how That the Home Depot Contract was paid In arrears This It's not as if The Home Depot Business of Mudline was Something new This has been a Three or four year Contract That's why These companies Were valued At such An extraordinary Amount of money And why The dollars In this Marital settlement Agreement are so High This was not a New vendor This has been an Ongoing concern And it just Wound up At the year That the Judgment for Dissolution Was entered Counsel let me Ask you In the September 30th 09 order Of the trial Court The trial Court Actually say That this Distribution Was a Business asset Does the Court actually Make a legal Ruling as to What that money Was in that Order In the September 09 Is that the Judgment for Dissolution That was in The Marital Settlement Agreement It just Says that Mr. Lyman's Awarded the Mudline Entities And Ms. Lyman's Awarded Various other Assets And then There's an Exchange Point Was there A finding Of law By the Trial Court As to What that Money Was No Because this Was an Agreed Marital Settlement There Wasn't an Evidentiary Adjudication That's the Other thing That different Those cases Retained Earnings I Don't Want To Get Caught Up In Presupposing That's the Case Was Their Full Disclosure To Mrs. Levine That Mrs. Lyman That the Home Depot Contract Once It Came To An End There Would Be Some Amount Of Money That Would Be Due And Owing To Robert Absolutely That's Why This Was Negotiated For The Payment To Be Due In                        The First Place In Fairness We Will Ask You To Bring Your Remarks To A Close For The Reasons I Talked About This Morning I Don't Think As A Matter Of Law The Money Was Not A Retained Earning It Was An Asset Of The Company For That Reason I Don't Think She Can Meet The Meritorious Claim Of The      Don't Think She Can Meet The Meritorious Claim Of The Company For